## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| *ex rel.* TENNESSEE VALLEY MARBLE ) | |
| HOLDING COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 04-1616 (RCL)** |
| **v.** ) | |
| ) | |
| GRUNLEY CONSTRUCTION, <u>et al.</u>, ) | |
| ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on four motions.  First, defendant Atlantic filed a

Motion [44] for Partial Summary Judgment with respect to plaintiff's claim for "delay damages"

arguing that such damages are prohibited under the contract between TVM and Atlantic.

Second, plaintiff responded with a Motion [48] to Strike defendant Atlantic's summary judgment

motion, arguing that the delay damages clause is not applicable because plaintiff is claiming

"impact" damages rather than "delay" damages.  Third, plaintiff filed a Motion [45] for

Discovery Sanctions against defendant Atlantic for allegedly failing to comply with discovery

requests and motions to compel.  Finally, plaintiff filed a Motion [51] for Partial Summary

Judgment asking the Court to grant summary judgment on Count I against defendant Grunley

and its payment bond sureties, NFIC and Continental, Count II against defendant Atlantic and its

payment bond surety, Old Republic, and Count IV against Grunley.

1

Upon consideration of each party's filings, the applicable law, and the entire record herein, the Court concludes that defendant Atlantic's Motion for Partial Summary Judgment will be GRANTED, plaintiff's Motion for Discovery Sanctions and Motion to Strike will be DENIED, and plaintiff's Motion for Partial Summary Judgment will be GRANTED as to Count IV and DENIED as to Counts I and II.

## I. BACKGROUND

Before its asset sale and bankruptcy, TVM owned and operated the marble quarry in Tennessee that was the source of the marble used in the original construction of the National Archives building in Washington, D.C. (Compl. 5.) In 1999, plans to renovate the National Archives building commenced. (Id.) The General Services Administration ("GSA") contacted TVM regarding the availability of marble that would match the existing building. (Id.) In May 2001, defendant Grunley received the primary contract to renovate the National Archives building. (Id.) In turn, Grunley awarded the stonework contract to Atlantic. (Id.) Atlantic subsequently contacted TVM regarding the marble needed for the stonework, and in June 2002, Atlantic and TVM entered into a written agreement concerning this specific project. (Id. at 5-6.) Eventually, disputes arose between TVM and Atlantic regarding TVM's alleged shipments of defective materials and Atlantic's nonpayment for some the alleged defective materials. (Id. at 6-8.) Consequently, TVM filed the instant action, seeking payment for work performed under the contract and "to vindicate its rights under the Miller Act payment bond issued on behalf of Grunley and the payment bond issued on behalf of Atlantic." (Pl.'s Mot. Sanctions 5.)

In its complaint, TVM asserts four claims. First, it alleges that Atlantic breached the written contract by failing to timely provide "accurate field measurements needed to fabricate certain pieces." (Compl. 9.) Defendant Atlantic, however, argues that plaintiff's claims are

barred by the "damages for delay" clause in the parties' written contract.  (Defs.' Mot. Partial Summ. J. 5-10.)  Defendant has moved for summary judgment on this issue.  Plaintiff counters that the delay damages clause is inapplicable because plaintiff is claiming "impact damages" rather than "delay damages."  (Pl.'s Mot. Strike 5-7.)

TVM's second claim is a breach of contract action against Grunley.  (Compl. 10-11.)  In August 2003, Grunley wrote a letter to TVM, agreeing to advance Atlantic a payment of $182,000, even though the payment was not yet due, so that Atlantic could in turn transfer this money to TVM.  (Pl.'s Ex. 13.)  Grunley arranged for this accelerated payment in order to ensure that TVM would not become insolvent before supplying the remainder of the marble, thereby securing Grunley's timely completion of the National Archives project.  (Id.)  Because TVM expressed concern that Atlantic would not forward the money as described, Grunley stated that it would pay TVM if Atlantic failed to do so.  (Id.)  Plaintiff alleges that Atlantic failed to pay and Grunley has only paid $75,000 to TVM and has therefore breached its agreement to pay $182,000 upon Atlantic's default.  (Compl. 10-12.)  Grunley contends that the agreement was not a binding contract and is therefore unenforceable.  (Defs.' Summ. J. Opp'n 2-4.)

Third, plaintiff asserts a common law payment bond claim against Atlantic and its payment bond surety, Old Republic, alleging that Grunley's letter to TVM provided TVM with a cause of action against Atlantic if Atlantic failed to pay.  (Compl. 9.)  Atlantic and Old Republic respond by arguing that any alleged contract between TVM and Grunley did not bind Atlantic and therefore did not provide TVM with a cause of action against Atlantic for its failure to transfer Grunley's payment to TVM.  (Defs.' Summ. J. Opp'n 2-4.)

Finally, plaintiff's fourth claim is under the Miller Act, 40 U.S.C.A §§ 3131-3134 (West 2006), which requires a general contractor on a federal construction project to furnish a payment

3

bond to protect suppliers and provides a cause of action for suppliers against the payment bond sureties for funds owed by the general contractor.  40 U.S.C.A §§ 3131(b)(2), 3133(b).  Plaintiff has sued the general contractor, defendant Grunley, as well as defendant Grunley's payment bond sureties, NFIC and Continental under the Miller Act because Atlantic allegedly failed to pay TVM for materials it provided.  (Compl. 8-9.)  In response, all defendants counterclaimed against TVM and filed a third party complaint against TVM's payment bond surety, F&D, alleging that TVM breached its contract with Atlantic, resulting in damages and overpayment in excess of $100,000.  (Answer 10.)  Grunley's third party complaint against F&D was subsequently dismissed because Grunley is not an entity that falls within the scope of F&D's contract bond.  (Jan. 31, 2005 Order 1.)  All defendants' counterclaims against TVM were dismissed upon defendants' motion because of the automatic stay that was imposed as a result of TVM's Chapter 11 petition for bankruptcy.  (Defs.' Mot. Dismiss Countercl. against TVM 1-2; Nov. 29, 2004 Order, 1.)

In response to plaintiff's Miller Act claims, defendants respond that TVM breached its contract with Atlantic, thereby causing injury to Grunley, and therefore TVM cannot be granted summary judgment on its Miller Act claims.  (Defs.' Summ. J. Opp'n 4-6.)  Defendants further assert that Grunley's sureties may assert the defenses of its principal, Grunley, and therefore the sureties may also argue that plaintiff's breach of contract bars TVM from achieving summary judgment on its Miller Act claim.  (Id. at 8-10.).

After plaintiff filed its complaint, defendant Atlantic subsequently filed a motion for summary judgment on Count III of plaintiff's complaint, arguing that the delay damages clause prevents plaintiff's claim.  Plaintiff then filed a motion to strike defendant Atlantic's motion for summary judgment, arguing that the delay damages clause is not applicable because plaintiff

claims "impact" damages rather than "delay" damages.  (Pl.'s Mot. Strike 5-7.)  Plaintiff also filed a motion for discovery sanctions against Atlantic.  Plaintiff's motion alleged that Atlantic had repeatedly failed to produce requested documents for discovery, despite two orders to compel issued by this Court.  (Pl.'s Mot. Sanctions 6-7.)  Plaintiff further alleged that defendant Atlantic had failed to adequately respond to interrogatories and produce documents related to Atlantic's counterclaim for backcharges against plaintiff for an alleged breach of contract.  (Id. at 6-7.)  Defendant Atlantic claims that plaintiff's request for sanctions is not ripe and even if it were, Atlantic has since produced most of the requested documents.  (Def.'s Sanctions Opp'n. 1-4.)  Plaintiff finally filed its own motion asking the Court for summary judgment on Counts I, II, and IV of the plaintiff's complaint.

## II.  DISCUSSION

### A.  Legal Standard

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment when the evidence in the record demonstrates that there are no disputed issues of material fact and that the moving party is entitled to judgment on the undisputed facts as a matter of law.  FED R. CIV. P. 56(c).  A genuine issue of material fact exists if the evidence, when viewed in the light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, a party must provide more than "a scintilla of evidence" in support of its position; the quantum of evidence must be such that a jury could reasonably find for the moving party.  Id. at 252.  The burden is on the movant to make the initial showing of the absence of a genuine issue of material fact in dispute.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party is then entitled to judgment as a matter of law if the non-moving party "fails to make a showing

5

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.  Additionally, when both parties move for summary judgment, a court must consider each motion separately, independent of the other party's motion.  See Nuzzo v. FBI, 1996 WL 741587, * 1 (D.D.C. 1996) ("When both parties in a cause of action move for summary judgment, each party must carry its own burden.").

**B.  Defendant Atlantic's Motion for Partial Summary Judgment**

Defendant Atlantic requests summary judgment against TVM or, alternatively, dismissal with respect to Count III of TVM's complaint because the $144,000 in damages claimed constitute "delay damages" and are therefore barred by the written contract between TVM and Atlantic.  (Defs.' Mot. Partial Summ. J. 1.)  Defendant further argue that the application of the delay damages clause should be governed by Maryland law because the written contract between TVM and Atlantic contained a provision designating Maryland law as the governing law for the purposes of the contract.  (Defs.' Ex. 1 ¶ 25.)  Plaintiff responds that the $144,000 claim constitutes "impact damages" rather than "delay damages" because TVM is not claiming damages for delay but rather is claiming a loss of productivity as a result of Atlantic's breach of the contract.  (Pl.'s Mot. Strike 5-7.)  Plaintiff further argues that the law of the District of Columbia should govern this dispute because the contract provision designating Maryland as the governing law does not apply to the payment bond defendants.  (Pl.'s Mot. Strike 11-12.)  As discussed below, the Court agrees with defendants.

**1.  Choice of Law**

This Court must first determine which law will govern the interpretation of the contract between TVM and Atlantic.  As clearly set forth in the contract, Maryland law governs this dispute.  The contract provided:

> This subcontract shall be governed by the laws of the State of
> Maryland where Contractor has its principal office and any actions
> of lawsuits arising hereunder to the extent permitted by law shall
> be brought in the District where Contractor's principal office is
> located without regard to principles of conflict of laws or forum
> non-convenience.

(Defs.' Ex. 1, ¶ 25.)  Where a contract contains a choice of law provision which designates the

law of a certain state to govern the contract, this Court will generally enforce such a provision

unless the jurisdiction chosen lacks a substantial relationship to the parties or the transaction.

See Casco Marino Dev. V. M/W Forrestall, 384 F. Supp. 2d 154, 160 (D.D.C. 2005) (Lamberth,

J.); Godbey v. Basil, 603 F. Supp. 775, 776 (D.D.C. 1985) (Greene, J.).  Here, there is a

sufficient relationship to the state of Maryland to satisfy this requirement, as Atlantic is

incorporated in Maryland and the parties signed the contract in Maryland.  (Defs.' Mot. Partial

Summ. J. 6.)  Furthermore, the evidence demonstrates a mutual intent of the parties to be bound

by the contract and there is no evidence of fraud, misrepresentation, or unconscionability in the

negotiation of the contract.  Therefore, Maryland law governs the interpretation of the contract

between TVM and Atlantic.

## 2. The "Damages for Delay" Clause

The contract between Atlantic and TVM also contained a "damages for delay" clause,

which provided:

> The Contractor shall not be independently liable to Supplier for
> any unforeseeable delay or interference occurring beyond the
> Contractor's control or for delay or interference caused by Owner
> or other contractors or suppliers.  Supplier shall only be entitled to
> reimbursement for any damages for delays recovered on its behalf
> by the Contractor from the Owner or others . . . .  A time extension
> shall be the sole and exclusive remedy of the Supplier for delays or
> suspensions caused by Contractor, even if the delays or
> suspensions were: (1) of a kind not contemplated by the parties, (2)

> amounted to an abandonment of the contract, or (3) were caused
> by active interference.

(Defs.' Ex. 1, ¶ 8.)  In short, the delay damages clause provides that the contractor, Atlantic, will

not be liable to the supplier, TVM, for "any unforeseeable delay or interference" caused by the

owner, Grunley, or other parties.  Furthermore, in the event of a delay caused by Atlantic itself,

the clause limits TVM's remedy to a time extension.  Therefore, TVM is prohibited from

obtaining any monetary damages for delay.  However, TVM contends that it is not claiming

"delay damages" but is instead claiming "impact damages."  Despite plaintiff's attempts to cloak

its claim for damages in language alleging a breach of contract, the Court is not persuaded that

the damages claimed by plaintiff escape characterization as "delay damages" under the contract.

There is no relevant difference between plaintiff's claimed damages and the type of damages

that the delay damages clause was intended to prohibit.

Plaintiff claims that it suffered "impact damages" when it incurred additional costs "due

to a loss of productivity stemming from [Atlantic's] breach of its contractual obligations."  (Pl.'s

Mot. Strike 5.)  Specifically, TVM alleges that Atlantic breached its contractual obligations to

TVM when Atlantic did not provide field verifications of certain marble pieces until after TVM

had sold its assets.  (Pl.'s Mot. Strike 6.)  Therefore, because Atlantic failed to furnish the field

verifications before the asset sale, "TVM was forced to pay the new owner to fabricate and

deliver the pieces, which caused TVM to incur additional production costs."  (Id.)  Although

plaintiff has attempted to characterize Atlantic's actions as a breach of contract, it has failed to

demonstrate that Atlantic's actions do not constitute a delay for which damages is prohibited

under the contract.

Where language has a generally prevailing meaning, it is interpreted in accordance with that meaning unless a different intention is manifested.  RESTATEMENT 2D CONTRACTS, § 202. Under Maryland law, the main focus when interpreting a contract is the "customary, ordinary, and accepted meaning" of the language used.  Walton v. Mariner Health of Md., Inc., 2006 WL 616640, at * 7 (Md. App. Mar. 14, 2006).  Accordingly, Maryland courts have "long adhered to the objective theory of contract interpretation, giving effect to the clear terms of agreements regardless of what the parties may have intended by those terms at the time of contract formation."  Id.  When the language of the contract is plain and unambiguous, a court must presume that the parties meant what they expressed.  Id. at 8.  Under these circumstances, "the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."  Id.

The delay damages clause is not ambiguous because it is not susceptible to more than one meaning.  Black's Law Dictionary 458 (8th ed. 2004) defines the word "delay" as "the act of postponing."  Given the ordinary meaning of the word "delay", a reasonable person in the position of the parties would have understood "delay" to encompass Atlantic providing TVM with certain documents at a date later than TVM expected.  See Auction and Estate Representatives, Inc. v. Ashton, 731 A.2d 441, 446 (Md. App. 1999).  Although it may be true, as plaintiff contends, that Atlantic's actions constituted a "failure to perform," such actions remain indistinguishable from a reasonable person's understanding of a "delay" and are therefore prohibited by the language of the contract.  Whether the delay was caused by Atlantic or was outside of Atlantic's control is irrelevant; the clause provides plaintiff no monetary remedy in either case.

9

Even if TVM did not understand the word "delay" to encompass a postponement in furnishing field verifications, Maryland law uses the "literal enforcement approach" to delay damages clauses, whereby an unambiguous provision precluding damages for delay will be enforced regardless whether the type of delay was contemplated by the parties.  State Highway Admin. v. Greiner Eng'g Serv.'s, Inc., 577 A.2d 363, 370-72 (Md. App. 1990) (holding that a damages for delay clause "clearly and unambiguously precludes recovery of delay damages").  Therefore, even if the delay that actually occurred was not of the type anticipated by the parties during contract formation, the "delay for damages" clause nevertheless precludes recovery of delay damages under Maryland law.  Id.

Because plaintiff's claims for damages are precluded by the delay damages clause in the contract between TVM and Atlantic, defendant Atlantic's Motion for Partial Summary Judgment is granted.  Because defendant Atlantic's Motion for Partial Summary Judgment is granted, defendant's alternative motion to dismiss is rendered moot.

**B.  Plaintiff's Motion to Strike**

Plaintiff moved to strike defendant Atlantic's summary judgment motion, arguing that the delay damages clause in the contract between TVM and Atlantic does not apply to plaintiff's claim because plaintiff claims "impact damages" rather than "delay damages."  Because the Court agrees with defendant Atlantic that plaintiff claims "delay damages" prohibited by the contract between TVM and Atlantic and therefore grants defendant Atlantic's summary judgment motion on Count III against TVM, plaintiff's Motion to Strike Atlantic's summary judgment motion is denied.

**C.  Plaintiff's Motion for Discovery Sanctions**

10

Plaintiff and F&D, its payment bond surety, have moved for discovery sanctions against defendant Atlantic, alleging that Atlantic has continuously failed to respond to plaintiff's discovery requests and has furthermore failed to adequately respond to the Court's two orders to compel.  (Pl.'s Mot. Sanctions 6-8.)  TVM and F&D request $1,500 in attorneys fees and contend that, consistent with Rule 37(b)(2) of the Federal Rules of Civil Procedure, Atlantic should be barred from supporting its alleged backcharges as a claim against F&D under the third party complaint or as a defense against TVM because Atlantic has failed to produce documents and information relevant to such backcharges as requested by TVM and ordered by the Court. (Id. at 8.)  Defendant Atlantic contends that TVM and F&D did not confer with Atlantic before filing this nondispositive motion as required by Local Rule 7.1(m), and therefore plaintiff's Motion for Discovery Sanctions should be denied as premature.  (Def.'s Sanctions Opp'n 1-4.)  In response, TVM and F&D argue that the motion for discovery sanctions is a dispositive motion and therefore the conference requirement does not apply.  (Pl.'s Sanctions Reply 2.)  The Court agrees with defendant Atlantic.

As defendant Atlantic contends, Local Rule 7.1(m) requires a party to confer with opposing counsel prior to filing a nondispositive motion.  Local Civil Rule 7.1(m).  TVM and F&D do not claim that they arranged a conference with defendant Atlantic's counsel; instead they argue that their motion for discovery sanctions is dispositive because the relief sought, if granted, renders the third party claim dismissed, thereby removing F&D from the case.  (Pl.'s Sanctions Reply 2.)  The Court is not persuaded by this argument.  The District Court for the District of Columbia[1] has defined a dispositive motion as "a motion that, if granted, would result

---

[1] The local procedural rules of the District of Columbia are authoritative because under the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), if a federal rule does not "significantly affect the result of litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in State court[,] federal law should apply.  Guaranty Trust Co. v. York, 326 U.S. 99, 109 (1945).

either in the determination of a particular claim on the merits or elimination of such a claim from the case." Neidermeir v. Office of Baucus, 153 F. Supp. 2d 23, 26 (D.D.C. 2001). In Sokos v. Hilton Hotels Corp., 283 F. Supp. 2d 42 (D.D.C. 2003), the Court held that a party must confer with opposing counsel under Local Rule 7.1(m) before filing a motion for sanctions. Sokos, 283 F. Supp. at 55. The Court in Sokos even went so far as to sanction the plaintiff's counsel for filing the frivolous motion for sanctions. Id. at 57. In light of this precedent, it is clear that a motion for sanctions is a nondispositive motion and is therefore subject to Local Rule 7.1(m), which requires that TVM and F&D confer with Atlantic's counsel prior to filing a motion for sanctions. Furthermore, even absent precedent treating a motion for discovery sanctions as a nondispositive motion, common sense dictates that this motion is nondispositive. For example, if the Court grants plaintiff's motion for sanctions and disallows defendant Atlantic from using certain information to prove the backcharges allegedly suffered by Atlantic, defendant may nonetheless be able to prove the backcharges. In this situation, the third party claim against F&D would not be dismissed, and therefore the motion for discovery sanctions would not be dispositive. Thus, TVM and F&D's Motion for Discovery Sanctions is denied as premature for failure to confer with defendant Atlantic's counsel before filing the motion because it is a nondispositive motion under Local Rule 7.1(m).

**D. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff has moved for summary judgment as to Counts I, II, and IV of the complaint. (Pl.'s Mot. Partial Summ. J. 2.) Count I alleged a Miller Act claim against defendant Grunley and its payment bond sureties, NFIC and Continental. Count II alleged a common law payment bond claim against defendant Atlantic and its payment bond surety, Old Republic. Count IV alleged a breach of contract against defendant Grunley. The Court agrees with plaintiff's

arguments with respect to Count IV and therefore will grant plaintiff's motion for summary

judgment with respect to Count IV.  However, plaintiff has not met its burden of proof with

respect to Counts I and II and therefore the Court will deny plaintiff's motion for summary

judgment with respect to those counts.

### 1.  Count IV

The Court will begin its discussion with Count IV.  Under Count IV, plaintiff has alleged

that defendant Grunley breached the contract formed between Grunley and TVM.  (Compl. 10-

11.)  Plaintiff bases its breach of contract claim on a letter written by Grunley's senior project

manager to TVM.  In the letter Grunley agreed to forward payment of $182,254.34 to Atlantic so

that Atlantic could in turn forward the payment to TVM, in order to "curtail [TVM's] possible

insolvency."  (Pl.'s Ex. 13.)  Most importantly, Grunley further "agreed that if [Atlantic] does

not fulfill their promise of making this payment to TVM in a reasonable period of time . . .

Grunley will process this payment directly to TVM and will deduct the proceeds from the next

[Atlantic] progress payment."  (Id.)  To date, however, Grunley has only paid TVM $75,000 and

therefore TVM claims breach of contract.  (Compl. 11-12.)  In response, Grunley argues that the

letter was not meant to be a "new and enforceable agreement" between Grunley and TVM.

(Defs.' Summ. J. Opp'n 2.)  In the alternative, Grunley argues that TVM's president

accompanied his signature of the letter with written "clarifications," thereby vitiating his

acceptance of the contract and constituting a counteroffer that Grunley never accepted.  (Id. at 3-

4.)  The Court is not persuaded by defendant Grunley's arguments and, for the reasons stated

below, agrees with plaintiff.

The letter certainly constituted a new contract between Grunley and TVM.  Prior to the

letter, there was no contractual relationship between Grunley and TVM.  Moreover, the letter

13

imposed obligations on the parties that did not exist before it was signed.  It obligated Grunley to waive its pay-when-paid clause and to guarantee that Atlantic would pass along a payment of $182,254.34.  (Pl.'s Ex. 13.) It further obligated TVM to use the payment to maintain operations so that Grunley's obligations could be completed on time.  (Id.)  Furthermore, Grunley partially performed on its promise by paying TVM $75,000. (Compl. 11.) Therefore, the letter constituted a new contract between TVM and Grunley, rather than a continuation of the already existing contractual arrangements between TVM and Atlantic.

Defendant's contention that an agreement was never accepted by TVM because TVM's president accompanied his signature with a clarification letter is not well-taken.  Under both Maryland and Tennessee law, "a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."[2] TENN. CODE ANN. § 47-2-207 (West 2006); MD. CODE ANN., COMM. LAW § 2-207 (West 2006).  In this case, TVM's written confirmation operated as an acceptance.  First, there is no contention that TVM did not send the written confirmation within a reasonable time. Secondly, TVM's acceptance was not expressly made conditional on assent to the clarifications. Defendant Grunley has not alleged that any such express condition existed.  Furthermore, under both Maryland and Tennessee law, courts look to the plain language of an agreement to determine the parties' intent and strictly exclude any parole evidence of intent, except where the pertinent contract language is ambiguous.  Gates, Duncan & Van Camp Co. v. Lavatino, 962

---

[2] It is unnecessary to address the choice of law issue raised by plaintiff because the relevant law in either Tennessee or Maryland will compel the same outcome.

S.W. 2d 21, 25 (Tenn. App. 1997); <u>Calomiris v. Woods</u>, 727 A.2d 358, 361-62 (Md. App. 1999).

Defendant Grunley has not alleged any ambiguity in the letter that requires the admission of

parole evidence and therefore, defendant Grunley may not use the Declaration of Rick

Armstrong to attempt to create a factual dispute as to the parties' intent with respect to the letter.

Therefore, plaintiff's motion for partial summary judgment is granted as to Count IV of

the complaint.

## 2. Count II

In Count II, plaintiff asserts a common law payment bond claim against defendant

Atlantic and its payment bond surety, Old Republic. (Compl. 9.) Plaintiff's claim is grounded

in the existence of the letter contract between TVM and Grunley. Plaintiff essentially contends

that Atlantic and Old Republic are bound by the contract between TVM and Grunley because the

letter specifically states that Atlantic will pay TVM $182,254.34. (Pl.'s Ex. 13.) Defendants

argue that the letter contract was not meant to be a new agreement. In the alternative, defendants

argue that its payment bond surety could not be held to guarantee performance of the letter

contract between TVM and Grunley because the bonds were issued before the letter contract was

written. (Defs.' Summ. J. Opp'n 9.)

Plaintiff has failed to meet its burden of proof in arguing that Atlantic and its payment

bond surety are bound by the letter contract between TVM and Grunley. Plaintiff has cited no

authority in support of its argument that parties to a contract may bind a third person who is

apparently not a party to the contract. In fact, some courts have held that "[i]t is a fundamental

principle of contract law that parties to a contract may bind only themselves and . . . may not

bind a third person who is not a party to the contract in absence of his consent to be bound."

<u>Sutton v. Messner</u>, 620 S.E. 2d 19, 23 (N.C. App. 2005) (citing <u>Ins. Co. v. Chantos</u>, 238 S.E. 2d

15

597, 602-03 (N.C. 1977)).   There is no evidence that defendant Atlantic consented to be bound

by the agreement between TVM and Grunley.  Defendant Atlantic did not sign the letter

contract, and the fact that Grunley stated in the letter that Atlantic gave Grunley its "assurance

that when the money is received [Atlantic would] process [TVM's] payment in the amount

stated above" merely constitutes evidence of an agreement between Grunley and Atlantic.  (Pl.'s

Ex. 13.)  Plaintiff fails to cite any authority that supports the contention that the existence of an

agreement between Grunley and Atlantic bestows upon TVM the right to raise a claim against

Atlantic.  Therefore, because plaintiff has failed to meet its burden, plaintiff's motion for

summary judgment as to Count II is denied.

### 3. Count I

Under Count I, TVM asserts a claim against defendant Grunley and its payment bond

sureties, NIFC and Continental, pursuant to the Miller Act.  (Compl. 8-9.)  Under the Miller Act,

a general contractor on a federal construction project must furnish a payment bond to protect the

labor and materials suppliers.  40 U.S.C.A § 3131(b)(2).  In compliance with the Miller Act,

Grunley furnished a payment bond through defendant NFIC and defendant Continental.  (Compl.

3-4.)  The Miller Act further provides a right to bring a civil action to "every person that has

furnished labor or material in carrying out work provided for in a contract for which a payment

bond is furnished under section 3131" and has not been paid within 90 days.  40 U.S.C.A §

3133(b)(1).  This section allows the supplier to sue the general contractor on the payment bond

in the absence of a direct contractual agreement between them, so long as the supplier has a

direct contractual relationship with the subcontractor.  Id. § 3133(b)(2).  Accordingly, TVM

brings suit on the payment bond against Grunley, NFIC and Continental under the Miller Act,

even though the original contract was between TVM and Atlantic.  (Compl. 8-9.)

To state a valid Miller Act claim, a plaintiff must prove essentially two elements: (1) it has "furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131"; and (2) it "has not been paid in full within 90 days." 40 U.S.C. § 3133(b)(1).  There is no contention that plaintiff has not stated a valid Miller Act claim and the Court finds no evidence to the contrary.

In response to plaintiff's Miller Act claim, defendants have alleged that plaintiff breached its contract with Atlantic, causing Atlantic and Grunley monetary damages, and therefore Grunley can claim recoupment as a defense.  (Defs.' Summ. J. Opp'n 4-6.)  Both Atlantic and Grunley previously filed a counterclaim against TVM for such recoupment damages, but have since dismissed the counterclaim as required by statute because of TVM's bankruptcy proceeding.  It is well-settled that a contractor may assert recoupment as a defense to a supplier's breach of contract action when the contract breached is between the contractor and the supplier. See United Structures of Am., Inc. v. G.R.G. Eng'g, S.E. and New Hampshire In. Co., 9 F.3d 996, 999 (1st Cir. 1993).  Whether a contractor may assert such a defense, however, absent privity of contract between the contractor and the supplier, is an issue of first impression in this Circuit.  The First and Ninth Circuits have addressed the issue and disagree as to whether the contractor may assert such a defense.  See id; United States for Use and Benefit of Martin Steel Constructors, Inc. v. Avanti Constructors, Inc., 750 F.2d 759 (9th Cir. 1984), cert denied, 474 U.S. 817 (1985).

In Avanti, the Ninth Circuit held that a "setoff" defense is not available in a Miller Act claim in the absence of privity.  750 F.2d at 762 (citing United States ex. rel. Johnson v. Morley, 98 F.2d 781 (2d Cir. 1938).  The Court determined that a "setoff" defense is "limited to those in which the plaintiff is a subcontractor or materialman of the general contractor and thus is in

17

direct contractual relations with the counterclaimant." Id.  The Court emphasized that the Miller Act "was created for the protection of [suppliers] and allowing a set-off defense by a general contractor not in privity with [the supplier] would unduly burden the enforcement of the rights created by the Act." Id.

In G.R.G., the First Circuit explicitly disagreed with the Ninth Circuit.  9 F.3d at 997-98. The Court held that the Miller Act did not bar a general contractor from deducting the amount it spent curing defects in materials supplied to the subcontractor from the supplier's claim. Id. at 1000.  More specifically, the Court held that the absence of privity between the general contractor and the supplier did not preclude the general contractor from seeking recoupment for defective materials. Id.  In so reasoning, the Court found that the Miller Act required a distinction between "setoff" and "recoupment," and held that claims in recoupment could be made under the Miller Act, even absent privity. Id. at 998-1000.  Setoff was defined as a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action," and recoupment was defined as "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction." Id. at 998.  Additionally, the Court noted that recoupment was intended to ensure that the "judgment to be rendered [] does justice in view of the one transaction as a whole." Id. at 999.  According to the Court, the Ninth Circuit improperly failed to draw a distinction between setoff and recoupment in Avanti. Id. at 998-1000.  Under the First Circuit's definition, the claim in Avanti was not a setoff, as the Ninth Circuit categorized it, but was actually a claim in recoupment. Id.

The First Circuit supported its conclusion by noting that the language of the Miller Act permitted a supplier to recover the "sums justly due him," and not the full contract price. Id. at

999.  Accordingly, the Court asserted that "the goal of recoupment, 'do[ing] justice in view of the one transaction as a whole,' matched the statute's requirement of determining the sums 'justly due' a supplier, making recoupment an appropriate defense in Miller Act cases."  Id. The Court held that the full contract price of goods supplied is not "justly due" a person who supplied defective goods.  Id.  In addition, the Court emphasized that the Miller Act's intended protection for "those whose labor and materials go into public projects" does not include payments to which the supplier's underlying contract does not entitle him.  Id.  In supporting its argument, the Court highlighted that "a Miller Act claim brought by a subcontractor who is in privity with the general contractor 'is subject to reduction' for 'defective articles or work,' even though the subcontractor's 'labor and materials' were as much a part of the project as were those of an out-of-privity supplier."  Id.  The existence or nonexistence of privity, argued the Court, should not make any difference with regard to the Miller Act's general policies.  Id. Furthermore, the Court asserted that permitting a general contractor to reduce a supplier's claim by the amount that the general contractor spent remedying the supplier's failure to comply with his contract does not "unduly burden[]" the supplier's Miller Act rights.  Id. at 999-1000.  The Court concluded that "disallowing recoupment would give the supplier rights to which his contract does not entitle him."  Id. at 1000.

In this case, the Court is persuaded by the First Circuit's reasoning and therefore adopts the rule laid out in G.R.G.: the absence of privity between the general contractor and the supplier does not preclude the general contractor from seeking recoupment for defective materials as a defense to the supplier's claim under the Miller Act.  Id.  While the Miller Act is certainly meant to protect those who supply materials for public projects, the statute was not

meant to entitle the supplier to more than it is "justly due." Id. at 999-1000.[3]  Accordingly, this

Court agrees with the First Circuit that the supplier asserting a Miller Act claim is not entitled to

more payment than that to which it is entitled in contract, and therefore the general contractor

may assert a defense of recoupment against the supplier's Miller Act claim.

Here, defendant Grunley's claim is in recoupment.  Plaintiff asserts a Miller Act claim

against Grunley based on defendant Atlantic's failure to pay for materials provided to Atlantic

by TVM.  (Pl.'s Mot. Partial Summ. J. 10-11.)  In response, Grunley claims that TVM breached

the contract by providing defective materials, missing deadlines, and failing to ship certain

materials.  (Defs. Summ. J. Opp'n 4-6.).  Therefore, defendant's claim arises out of the same

transaction as plaintiff's Miller Act claim.  See G.R.G., 9 F.3d at 998.  Accordingly, defendant's

claim is in recoupment and may be asserted as a defense to plaintiff's Miller Act claim.  See id.

at 1000.

The Court agrees with the First Circuit that it is contrary to the policies underlying the

Miller Act to allow a recoupment claim where there is privity of contract while disallowing such

a claim in the absence of privity.  See id. at 999.  A Miller Act claim brought by a subcontractor

who is in privity with the general contractor may be reduced by a recoupment claim, "even

though the subcontractor's 'labor and materials' were as much a part of the project as were those

of an out-of-privity supplier."  Id.  The underlying policy of the Miller Act, to protect suppliers

of materials for public projects, is satisfied regardless of whether or not there is privity between

---

[3] Although the current version of the Miller Act does not use the phrase "justly due" as did its predecessor, the 2002 amendments were not meant to substantively change the statute.  H.R. REP. NO. 107-479, at 2 (2002), reprinted in 2002 U.S.C.C.A.N. 827, 827-28.  The changes in language merely resulted from consolidating related provisions of law, the pursuit to achieve uniformity within the title, or to conform to common contemporary usage. Id.  Therefore, the First Circuit's reliance on the phrase "justly due" in reaching its conclusion need not affect the Court's reasoning; the Court's interpretation of the Miller Act's underlying policies still serves as valuable persuasive authority because the 2002 amendments to the Miller Act did not change the substance of the statute.

the parties.  See id.  There is no undue burden on the supplier's Miller Act rights in limiting the

supplier's claims to that which it is entitled under contract.  Id.  The supplier is still adequately

protected under the Miller Act, even though it may not be entitled to the full contract price,

where it provided defective goods or otherwise breached the contract provisions.  Therefore, it is

consistent with the policies underlying the Miller Act to allow a general contractor not in privity

with the supplier to defend the supplier's Miller Act claim with a claim in recoupment.

Because defendant Grunley may assert its claim in recoupment as a defense against

plaintiff's Miller Act claim, plaintiff is not entitled to summary judgment on its Miller Act

claim.  Therefore, plaintiff's motion for partial summary judgment as to Count I is denied.

## CONCLUSION

Upon review of the record herein, the Court concludes that defendant Atlantic is entitled

to summary judgment on Count III; accordingly, plaintiff is not entitled to damages under that

count.  The Court further concludes that a valid and enforceable contract exists between TVM

and Grunley; accordingly, plaintiff is entitled to summary judgment on Count IV against

defendant Grunley.  With respect to Counts I and II, however, plaintiff is not entitled to

summary judgment.  Finally, the Court concludes that plaintiff and third party defendant's

motion for discovery sanctions is denied because of their failure to follow Local Rule 7.1(m).

A separate Order will issue this date.

Signed by Royce C. Lamberth, United States District Judge, May 17, 2006.

21